Revival Chiropractic v. Allstate. Good morning. May it please the Court, my name is Rick Godfrey. I represent the Allstate PIP statute, the Personal Injury Protection Act statute made in Florida. We asked a juggler question in our brief, does the PIP statute mandate an insurance company under any circumstances mandate that it pay 100% of the medical provider's bills? We submit the answer is no. Plaintiffs in the district court said yes. It looks like the 4th and 5th DCAs have interpreted the statute as Revival argues, as the district court has. Indeed, they have indeed, and lower courts are in disarray, but something happened here that changes the landscape materially. We notified the court of the supplemental authority called MRI Associates, came down in December after the briefing was done. It's not quite on point, but it's on point in this sense. Every single predicate argument for the interpretation adopted by the district court was rejected as a matter of law by MRI Associates. The foundational premise of the cases relied upon by my colleague at the bar is that the statute, under virtual imaging, set up only two choices, the fact-dependent methodology or the fee schedule. Those were your two choices. You didn't have a third choice. You didn't have any other alternatives. And MRI Associates said, no, that's not what we held. We never said that. We never said that. What MRI Associates does is rejects the foundational premise for the statutory interpretation. It holds, one, that 80% payment is the mandate. It says, two, the hybrid payment methodology that was outlined in the state farm policy, that's okay. That's necessary to achieve the 80% mandate. It says, three, it's okay. I'll ask a question when you're done with that. Your Honor, I defer to you. I was just going to ask you a question about, you know, let's assume that you can, as your client, limit payment to 80% of reasonable fees. And I guess my question to you is, under the sort of, I'll call it the totality of the circumstances approach for reasonable fees. You understand what I mean? I'm not talking about twice. Yes. Okay. So is it possible to have a fee that is lower than reasonable fees in the area? In which case, you would have to pay 80% of what you'd have to determine the reasonable fees in the area were? By definition, if a fee is less than the fee schedule amount, then under the statute, it's a reasonable fee. Okay. So that's not what I'm asking. So that's... I'm sorry. I've probably been a little unclear. There are two ways to determine fees, right? I mean, you can do it hybrid, but there are two ways. One is the maximum fees, 80% of that, two times that. The other one is, you look to sort of all of the factors and considerations in the market or the environment, right? I guess it's sort of a totality of the circumstances approach to see what's reasonable. Is that right? No, the MRI associates rejected that there are two ways. I understand that. Okay. Yeah. I understand... But if you're focusing on the fact-dependent method, then I agree with you. If you're focusing just on the fact-dependent method, we look at... Yes. That's what I'm saying. Yes. If you look at that... Right. Then there are a number of ways of determining that. Okay. What I'm asking you is, is it possible for a fee to be lower than what you would determine would be the reasonable fee under that method? I understand you can do it hybrid, but just looking at that method... Let me put it this way to make it easier. Let's assume that whatever the reasonable fee is under the totality of the circumstances method is less than 80% of twice the scheduled fees, okay? The maximum scheduled fees. Do you understand what I'm saying? I think so, but we'll see after you're done with the question. Okay. I'll do my best. So then you have a fee request that comes in that is lower than what you might otherwise think was a reasonable fee. Is it possible or, by definition, is it a reasonable fee if it's lower than what you would otherwise be willing to pay? That's what I'm trying to find out. The matter is, by definition, if the fee is less than the fee schedule or other fees in the area, by definition, it's a reasonable fee. So a reasonable fee is a ceiling but not a floor under the totality method? I'm playing that in my mind because that's how MRI associates enter the opinion that the fees... That's almost a quote from MRI associates, right? It is almost precisely a quote, Your Honor, at the very last page. So I'm playing... Except that in MRI, it's saying that you can do it as a hybrid, right? But my question for you is whether there is... Whether by definition, right, anything that is submitted that is less than or equal to what you would think is a reasonable fee is a reasonable fee, and therefore, you can take 80% of. So for example, let's say... That's how we read the statute. I'm aware of no case to the contrary, but that's how we read the statute. It might help if we step back and ask how the statute is looked at holistically. You start with... And MRI associates did this, and it's been very helpful. Section 627.736.1A, the 80% mandate, that's the overarching mandate. Everyone agrees with that. So then, section 627.736.5A1 says the insurance company may limit to the fee schedules. And MRI says that's not the only way to do it, nor is it a fact-dependent way. The hybrid methodology way has been rejected, accepted, not rejected, contrary to what the district court did. So then you get to 5A5, which was the issue in the orthopedic specialist case. That you may pay it. You may pay it. I understand. But here's what's important, and it's very important. It's undisputed here that all state elected fee schedule are also said right after the election in the event that the bill is less than the fee schedule, will pay 80%. They made that election. And the question becomes then, what is the meaning of the last sentence of the notice provision? If a provider submits a charge amount less than the amount allowed under subparagraph one, the insurer may pay the amount of the charge submitted. The reason the legislature added that sentence was when you give notice, there otherwise would be an ambiguity as to whether the insurance company was going to pay the fee schedule or the 80%, which is the mandatory amount, the mandatory charge. And all state elected and said, we're going to pay 80%. It answered the question, and it was may, permissive, which also MRI said is permissive, is not mandatory. What happened here was the district court rewrote the PIP statute. It eliminated the 80% mandatory limit. It transformed the word may into must. It refused to look at the all state language of the policy after the election, which clearly sets forth in the stipulation, which is DE number 26, page three, that all state is going to pay 80% of the lesser charges, and MRI associates rejects that analysis. So what's happened here is we had asked to certify the question, as you know, to the Florida Supreme Court. The court said it would take the issue with the merits. The briefing happened. We think there's now more than a sufficient basis based upon MRI associates to make an eerie prediction by this court. Can I just ask you a question, though? I agree with everything you've said about what is not correct about the district court opinion. I think I agree with it all. The one thing that I don't . . . I hope you agree with it all. The one thing that I don't understand, though, is what I want to get back to that I asked you at the beginning, because the language about it's a ceiling but not a floor is tied specifically to the schedule of maximum charges part, not to the totality of the circumstances definition of reasonable fees. And so what I'm trying to figure out is whether that is also a ceiling but not a floor, or of what you all determined by totality of the circumstances would be a reasonable fee that would then be reimbursed up to 80 percent of what you've previously determined to be a reasonable fee. So, for example, in the market that you're in, let's say that you've previously determined or you regularly determine that charges for the type of medical care that was given here you would pay, let's just make it easy and say $1,000 for, and that that is a reasonable . . . that's reasonable. And then you get a claim for $500. So the question is, would you pay . . . I mean, does the language in your policy and does the language in the statute, which are two different questions, require you to pay the $500 in total or 80 percent of the $500 under the reasonable fee analysis, assuming that the reasonable fees that you've usually used are $1,000 and that that is also less than 80 percent of two times the maximum schedule of fees? Do you understand what I'm saying? Yes. And the answers are two. One, the policy clearly states we will pay 80 percent of whatever the charge is if it's less than the fee schedule. And two, under the statute, the 80 percent mandate of Section 627.736.1A governs. There's a reason for that. There's no statutory exception mandating an insurance company to pay 100 percent of the medical providers' bills, period. And there's a reason for that. I think I'm having a different question, though. I guess my question for you is, where in the statute do we understand that there is a ceiling but not a floor on the meaning of the totality of the circumstances definition of reasonable fees? The ceiling on a floor language was specific to the fee schedules. Yes. It does not address the question that you are asking. And that's why I'm asking it. I'm wondering if there's something in the statute. The thing that's in the statute that governs is the overarching mandate of 80 percent payment. That's the thing that governs. Okay. I see my time is up. Thank you very much. Let's hear from Mr. Barr. Good morning. May it please the Court. I'm a little nervous. It's the first time I've been in front of a court live in a couple of years. I understand. Nice to be back open. Judge, happy birthday. Thanks. My name is Chad Barr. I, along with Larry Kopelman, who's here with me today, and Allison Lederman, who wanted to be but could not be here today, represent Revival Chiropractic, who is the plaintiff appellee and the cross appellant in this case. We're asking the court to affirm the district court's summary judgment ruling that all states' reimbursement method of reimbursing lesser charges at 80 percent violates the PIP statute. We are also asking the court to reverse the district court's refusal to certify the class in this case, to allow this case to proceed as a class action. The constant theme throughout all states' briefs and its argument today is that the district court rewrote the PIP statute. To the contrary, all state is the one attempting to rewrite the PIP statute, specifically, all state is attempting to rewrite the last sentence of subsection 6277365A5. As Judge Pryor noted, when counsel for all state began, the fourth and fifth district courts of appeal have addressed these precise issues. And before we even get into the merits of MRI associates, it is important to know that not only did the fourth and fifth address this issue, but the fourth district in the Moransky case cited to the district court's opinion in this case, not once, but twice in support of its conclusion and interpretation of section 5A5 of the PIP statute. But what are we to make of the MRI case, which is the Florida Supreme Court case, which seems, at least it seems to me anyway, to undermine the fourth and fifth DCAs? It's very simple. One, the ultimate question in MRI associates was, the state farms policy allows state farm to utilize the fee schedule. That was the question. They tried to bring up these other issues. They tried to argue at the district court level, at the second DCA, this BA stuff. We refer to this as BA in Florida. I don't know if you've caught that in our briefs, but they tried to argue that at the second district court appeal, but it was stipulated before the trial court that that wasn't going to be an issue. The only issue was, does state farms policy properly provide notice under 5A5 that it's going to use the fee schedule to limit reimbursement? The court said- It's a different question from whether the all state policy violates the Florida statute. It absolutely did not address all states policy. And the biggest thing is, there's a massive, insurmountable distinction between state farms policy and all states policy. The biggest part of that is, state farms policy provides a definition of reasonable charge. And the court said that state farms policy of a reasonable charge tracks 5A through 5A1 through 5. So it incorporates both the old, fact-dependent method of determining reasonableness with all the little factors, as well as the schedule of maximum charges as a factor of reasonableness. So state farms policy is saying, we're going to consider all of this. We can consider all of it. That's not what all states policy says. Judge Byron's decision said, all states policy is vastly different. It doesn't incorporate the fact-dependent method at all. It doesn't intertwine any of the issues like state farms policy does. It simply says, we are electing to pay pursuant to the schedule of maximum charges. Once you do that, that's when the 4th and 5th DCA decisions kick in. Once you do that, you are bound by, and in fact, the Florida Supreme Court never addresses the last sentence of 5A5, because it doesn't have to. It doesn't need to, because that issue wasn't before it. But the Supreme Court did say, there's a very important sentence in the Supreme Court's decision, MRI Associates, where the Supreme Court says, if you are going to pay pursuant to the schedule, sections 5A1 through 5A5 apply. That's what the Florida Supreme Court said in MRI Associates. So the MRI Associates never gets to the actual issue of, how do we pay these claims? It only gets to the issue of, what can State Farm consider? State Farm's policy only. Not all states policy. They're not even close to being the same. So that brings us back to, what did the 4th DCA say? What did the 5th DCA say? It's also important to understand that when the Florida Supreme Court was deciding MRI Associates, the counsel that represented the medical provider in that case filed the Moransky case, filed the 4th DCA's case that referenced and relied on the district court's case in this case, filed Moransky as supplemental authority before the Florida Supreme Court. So at the moment, the Florida Supreme Court was deciding MRI Associates, it had in its hand the Moransky decision. It could have said, we disagree with Moransky's interpretation of the Pitt statute. Why would you do that? If you're right that the issue wasn't before the Florida Supreme Court, why would they do that? I mean, that kind of argument . . . For precisely the reason that Judge Rosenbaum is asking the question about whether MRI Associates . . . It would be pure dicta. I mean, come on. That's a weak argument. And I understand that. So the next to that, the corollary of that is, at the moment that the 5th DCA again was presented with the issue of, how do we pay a claim that's less than the schedule of the case, the court had already decided MRI Associates. So MRI Associates was issued by the Florida Supreme Court, and then three months later, the 5th DCA again doubles down and says that if an insurer elects to pay pursuant to the fee schedule, then they have to follow what is required in 5A1 through 5. And they could have said, we were wrong, the Florida Supreme Court said we were wrong, and we were wrong. It was filed as supplemental authority by Geico in that case, and the 5th DCA didn't do that. So what we have is MRI Associates, which says State Farm can pay pursuant to the fee schedule, or 5A, which is the fact-dependent method, referring to that as a hybrid method. And we've got the 4th and 5th DCA, which has held that if it's less than 200 percent of Medicare, then all states have to pay 80 percent of 200 percent of Medicare. If it's less than 80 percent of 200 percent of Medicare, all states have to pay the amount of the charge submitted. Could you just answer me, I mean, I appreciate you walking through that precedent, I really do, but where in the, I just, I look at the statute, where in the statute does it say that the insurer has to pay the amount of the charge submitted? I mean, it seems like it says, it seems like the only place it tells the insurer what the insurer has to do is at the very beginning, where it says insurers have to pay 80 percent of all reasonable expenses, and then everything else is may, may, may, may, may, I mean. I understand, and I understand the confusion. I want to address first the argument that Allstate makes, it was made by Geico and Moransky, and they said that the 80 percent limitation in 5A, excuse me, in 1A, which we refer to as the reasonable expense mandate in Florida, we have all these catchy terms for things, but Geico argued in Moransky that the 80 percent reasonableness mandate is overarching. It covers everything about the PIV statute, and the 4th District Court of Appeal said that is clearly erroneous because of the statement, the last sentence in Section 5A.5. Where it says, I mean, it says may, though, right? I mean, it says may, but the alternative to that is that Allstate has to pay 80 percent of 200 percent of Medicare, which is the, which is what the 5th DCA says is the amount that the insurer is required to pay if they choose to pay pursuant to the fee schedule. So, if a charge comes in, it's less than 80 percent of 200 percent of Medicare, okay? The insurance company has two choices. It can either pay 80 percent of 200 percent of Medicare, which would cause that insurance company to have to pay more than what the charge was submitted, or they may pay, they may pay the amount of the charge submitted. So, when the legislature enacted 5A.5, they understood, they recognized the inequity that could present itself if an insured, if a medical provider submitted a bill that was less than 200, 80 percent of 200 percent of Medicare, and they said, you don't have to pay up to 80 percent of 200 percent of Medicare. You can if you want, but the baseline is the amount of the charge submitted. So, the other alternative would be to pay up to 80 percent of 200 percent of Medicare. We didn't ask for that. We asked that the court require that all state pay the charge and the amount of the charge submitted. We did not ask for them to pay more than what our charge was that we submitted. I think, and Judge Byron did a, and I think it was, it was, it was very smartly worded, but the way he said that this whole scenario, the whole 5A.5 scenario creates the win, win, excuse me, the win, win, win scenario, all right? The insured is, they have the option and they utilize the option of paying less than 80 percent of 200 percent of Medicare. The medical provider is paid more of their balance and the insured pays less in PIP benefits and pays less in a co-pay. So, the win, win, win scenario is very strong. It's supported by the 4th and 5th districts. MRI Associates doesn't remotely address the issue in this case. I want to just briefly touch on the issue that we raised in our cross appeal. I want the court to understand why this is so important to us. There are tens of thousands of. Yeah, you have a lot harder time with me on that. I mean, this doesn't seem like a true B2 class as the declaratory relief was sought only to lay the foundation for a damages award. And there's nothing wrong with the fact that damages flow from it so long as they're incidental and not primary. And so, the issue is what we want the court to do is provide notice to these. That wasn't. You look at AA Suncoast Chiropractic, I think you've got a tough case. Well, we're just, we're asking for notice. We're asking for Allstate to not sit on the $5 million that it's sitting on with respect to the unlawfully paid claims. 627736 subsection 11 specifically refers to this as unfair and deceptive trade practices by the insurance company. To know that you are doing something unlawfully and to require a demand letter in order to, in order to have to make payments. And that's exactly what Allstate's doing in this case is they're saying, we're going to sit on this $5 million. We have been told we did something wrong. We're going to sit on this $5 million and we're going to wait until these unsuspecting medical providers come forward and ask us to pay them. And I think that's part of what the class action that we allege in this case was designed to prevent. I mean, why isn't this a 23A class though? I mean, it just seems, I mean, I get your point that you're seeking some declaratory relief, but it just really seems like damages is the primary focus here. And I mean, you don't necessarily lose, I don't think, if it's a 23A class, right? I mean, you could still be certified under 23A. I'm, one of the things I'm confused about is why you're fighting to be certified under something that doesn't really seem to apply to what's going on here. Because we, the primary issue is notice. We did not want, or we did not want to force the district court to litigate all of these claims on a monetary basis. We wanted the issue to be raised by notice that the claims were unlawfully paid and to allow the medical providers to then make the choice whether or not they wanted to proceed and pursue those benefits on their own. Yeah, but I mean, but I guess my, I mean, this, I'm trying to be helpful, I suppose, but I mean, this seems like a case where you could certify a class, right? I mean, all the medical providers have the same claim. They were paid at 80% instead of 100% of the reasonable fee. The only, there's a lot of commonality. There's a lot of numerosity. I mean, I. You're just not sure that those common issues predominate. I guess, I guess that's right. I. I didn't hear what you said yet. I said, you're, you're just not sure those, that you'll be able to convince the district court  Perhaps. Perhaps. I've reached the end of my argument. If you don't have any other questions, I'll tend to the rest of my time back to the court. Thank you. Thank you for having us. It's a pleasure being here. Mr. Godfrey. Thank you, Your Honor. Do I start with the cross appeal first? I agree with Your Honor about AA Suncoast. It's not a proper B2 class, but I think the notion that they're only asking for notice. No, they're asking for the readjustment and the calculation of individual damages, class member by class member. And that's replete throughout. They want to recalculation of the claims and payment. It seems precisely they want it on an individual basis, which requires us to have the defenses analyzed, et cetera, et cetera. Secondly, an answer to your question, Your Honor, about 23A1. They alleged it in the complaint. They didn't move on it. The court noticed that they didn't move on it. Then they had a new motion later on where they moved on it. Magistrate judge recommended denying it, gave reasons. Well, that's not a basis for the cross appeal. Right. I was going to get that's fine. Yeah. And I mean, my question was just why aren't we talking about that? Just for the record, so the court is aware, that's what happened. Okay. So respectfully, with respect to the cross appeal, we think that the district court judge got it right. Now on to the merits appeal. First, there's no exception in the statute mandating an insurance company to pay 100%. One would think that if you're going to make a change, which the virtual imaging court, Supreme Court said, goes to the heart of the statute, the 80% mandate, you'd have a line in the statute. You'd have a line in legislative history. You'd have a line in some case saying that. It's the biggest, this case confused me for a good while, because when I read the statute, it looked like you were right. But then I read the Florida 4th and 5th DCAs, and they say you're wrong. And Moransky takes out their foundational predicate. It rejects the foundational predicate. It starts with an 80% mandate. It continues to basically undo everything that they say. But here's the point. Cases since MRI Associates came down, we cited this in supplemental authority, there are cases since saying the 4th and 5th DCAs are wrong. Those cases were driven by the GEICO policy. The GEICO policy was unlike all states, unfortunately. GEICO was silent on whether and what they would do with respect to so-called lesser charges. Although they weren't entirely silent. One of them said one of those cases actually based its ruling in part on the statutory language, didn't it? It did, but again, you have to transform the word may into must. And you have to pervert the statute. Remember, the statute starts with an overarching premise. I understand. I'm just pointing out that there is case law that construes the statute differently than you do. Correct. That is not dependent on the policy language. Well, the cases we cited view it as driven by the policy language. The MRI Associates case is driven by the policy language. And we just happen to disagree with the 4th and 5th DCA. This is my fifth PIP appeal. I'm only, I guess, get involved for PIP appeals. And the statute has been a vexing statute in the Florida lower courts for years. That's why we suggested certification. But after MRI Associates came down, we believe there's a solid basis now for an ERIE prediction because you cannot square MRI Associates. And the analysis of that opinion, which was unanimous, with the arguments that are being made here. Do you agree with your friend on the other side of the case that was in counsel that this direct issue wasn't raised in MRI Associates? The issue of the lesser charge issue, that precise issue was not raised. The analysis and the interpretation of the statute. That's why I said it's, I think it's controlling, but not on point. The analysis is controlling of how one should properly read and interpret the statute. But there's no question that MRI Associates did not address the lesser charges in a policy like all states. What it did was it took out the underpinnings of the analysis of Judge Byron below. Yeah. I mean, it seems like the best way to look at your case and correct me if I'm wrong, but I mean, it seems like you're saying, look, the statute says what it says. The Florida Supreme Court has read the statute in a general way to suggest that it says what it says and we, the insurance company, win. And so we should just follow that and not what these intermediate appellate courts in Florida have said, right? A little bit more than that. Okay. Which is that it just didn't do it in a general way. It took the specific analytical paradigm. Remember the same counsel here was involved. Not this precise issue. But not on this precise issue, but the foundational predicate is. I think that's all Judge Brasher really meant. Okay. Okay. That's right. But you're right. It did not address the precise issue, but the analysis of the statute, the paradigm either or fee schedule or reasonable charge said no. And all state followed the language. And then you go back to, well, if all state didn't have MRI Associates, what are our principle arguments? We just say the 4th and 5th DCA were wrong. We had the same issue in Holy Cross. We had the same issue in Orthopedic Specialists, which is they had to rewrite the statute to eliminate the 80% overarching mandate. You had to insert 100% payment mandate. You had to prohibit policies from having language like all state's policies, which says that they'll pay 80% of the lesser charge. And you'll have to redefine the word may into must or shall, which is contrary both to Orthopedic Specialists, but more importantly, contrary to MRI Associates. I see that my time is within three seconds of being up. So we respectfully ask this court either to reverse on the basis of MRI Associates. We think that can make an eerie prediction or to certify the question that we requested being certified to the Florida Supreme Court. Thank you. It's always a pleasure to be in this court, although all my previous experiences were in Atlanta. So this is my first time in Miami. So thank you very much for having me. Thank you, Mr. Godfrey. We are adjourned for the week.